EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rosa López Echevarría<br><br>Peticionaria<br><br>v.<br><br>Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura<br><br>Recurrida | Certiorari<br><br>2006 TSPR 137<br><br>168 DPR \_\_\_\_ |

Número del Caso: CC-2004-0330

Fecha: 30 de agosto de 2006

Tribunal de Apelaciones:

Región Judicial de San Juan-Panel II

Juez Ponente:

Hon. Mildred G. Pabón Charneco

Abogada de la Parte Peticionaria:

Lcda. Susan Marie Cordero Ladner

Oficina del Procurador General:

Lcda. María Astrid Hernández Martín
Procuradora General Auxiliar

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rosa López Echevarría

    Peticionaria

        v.                    CC-2004-330     Certiorari

Administración de los
Sistemas de Retiro de los
Empleados del Gobierno y la
Judicatura

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 30 de agosto de 2006.

Mediante el presente recurso se nos solicita revisar un dictamen del Tribunal de Apelaciones mediante el cual se confirmó la Resolución de la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante, Junta de Síndicos). Mediante dicha Resolución, el foro apelativo intermedio confirmó la denegatoria de la Junta de Síndicos a conceder los beneficios de incapacidad ocupacional a la Sra. Rosa López Echevarría (en adelante, señora López Echevarría). Por los fundamentos que expondremos a continuación, confirmamos.

I

La señora López Echevarría, de 59 años, trabajó como Ayudante de Cocina para el Departamento de Educación del Gobierno de Puerto Rico. El 20 de agosto de 1996, sufrió un accidente de trabajo, a consecuencia del cual advirtió molestias en la pierna derecha, en los codos y en la cintura. La Corporación del Fondo de Seguro del Estado (en adelante, Fondo) le diagnosticó la condición de "right and left epicondilitis, right and left tendosinovitis, sprain lumbar, right knee sprain, s/p right and left". El Fondo le reconoció una incapacidad de un veinticinco por ciento (25%) F.F., diez por ciento (10%) por "pérdida mano derecha por la muñeca", quince por ciento (15%) por "pérdida de mano izquierda por la muñeca" y cinco por ciento (5%) F.F. "sprain lumbar".

Basado en la Ley Núm 447 de 15 de mayo de 1951, según enmendada, 3 L.P.R.A. § 761 *et seq.*, la señora López Echevarría presentó una solicitud de pensión por incapacidad ocupacional y no ocupacional ante la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (en adelante, Administración). La Administración denegó dicha solicitud, por la razón que la condición de la señora López Echevarría no cumplía con los requisitos establecidos para la concesión de los beneficios de pensión. La señora López Echevarría solicitó reconsideración de la denegatoria de la solicitud por incapacidad ocupacional, la cual fue denegada.

La peticionaria presentó escrito de apelación ante la Junta de Síndicos. Celebrada vista administrativa en su fondo, la Junta de Síndicos emitió resolución ratificando la determinación de la Administración. La peticionaria solicitó reconsideración, la cual se entendió denegada de plano por inacción.

La señora López Echevarría recurrió ante el Tribunal de Apelaciones. Dicho foro confirmó el dictamen administrativo por entender que la Junta de Síndicos fundamentó su decisión en la totalidad de la prueba obrante en autos y que la señora López Echevarría no puso al tribunal en condiciones de sustituir la apreciación de la Junta de Síndicos. Concluyó concediendo deferencia administrativa a la agencia.

Inconforme, la señora López Echevarría acude ante nos. Arguye que incidió el Tribunal de Apelaciones al sostener la determinación de no incapacidad hecha por la Junta de Síndicos, por la razón que la misma no se conforma a la evidencia que obra en el expediente. Señala, además, que erró el Tribunal de Apelaciones al sostener la interpretación que hace la Junta de Síndicos de la Ley y el Reglamento del Sistema de Retiro.

Vista la petición, acordamos expedir y resolvemos.

II

Nos corresponde determinar si actuó correctamente el foro apelativo intermedio al confirmar la determinación de la Junta de Síndicos denegando la pensión por incapacidad

solicitada. La controversia se circunscribe al alcance de la revisión judicial respecto a las decisiones administrativas.

La función principal de la revisión judicial de las determinaciones de las agencias con poderes adjudicativos es asegurarse que las agencias actúen dentro del marco de la facultad delegada por la Asamblea Legislativa y que cumplan con los preceptos constitucionales. *Assoc. Ins. Agencias, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425 (1997).

Los tribunales apelativos han de conceder una gran consideración y deferencia a las decisiones administrativas en vista de la experiencia y conocimiento especializado de las agencias. La función revisora de los tribunales está limitada a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656 (1997); *T-JAC, Inc. V. Caguas Centrum*, 148 D.P.R. 70 (1999).

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico", 3 L.P.R.A. § 2175.

La norma de la evidencia sustancial, aplicable a las determinaciones de hecho de una agencia administrativa, persigue evitar la sustitución del criterio del organismo

administrativo en materia especializada por el criterio del tribunal revisor. *Reyes Salcedo v. Policía de Puerto Rico*, 143 D.P.R. 85 (1997). La evidencia sustancial es aquella evidencia que una mente razonable puede aceptar como adecuada para sostener una conclusión. *Misión Industrial P.R. v. Junta de Planificación,* 146 D.P.R. 64 (1998); *Hilton v. Junta de Salario Mínimo*, 74 D.P.R. 670 (1953). Dicha norma nos impone la obligación de examinar la totalidad de la prueba sometida a la agencia según consta en el expediente administrativo sometido a nuestra consideración. *Assoc. Ins. Agencias, Inc. v. Com. Seg. P.R.*, supra.

Las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esa deferencia se debe a que las agencias cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. *Pacheco Torres v. Estancias de Yauco*, res. el 30 de septiembre de 2003, 2003 TSPR 148; *González Santiago v. Fondo de Seguro del Estado*, 118 D.P.R. 11 (1986).

Por lo tanto, la intervención del tribunal se limita a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos los tribunales deberán sostener la decisión de la agencia y no sustituirán su criterio por el de la agencia. *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 D.P.R. 70 (2000). El tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una

base racional para explicar la decisión administrativa. *Misión Industrial P.R. v. Junta de Planificación*, supra.

Las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194 (1987). Para convencer al tribunal que la evidencia en la que se basó el organismo para formular las determinaciones de hecho no era sustancial, la parte afectada debe demostrar que existe otra prueba en el record que reduzca o menoscabe el valor probatorio de la evidencia impugnada y que permita concluir que la determinación de la agencia no fue razonable de acuerdo con la totalidad de la prueba sometida. *Misión Industrial P.R. v. Junta de Planificación*, supra.

La norma de otorgar gran deferencia y respeto a las interpretaciones de organismos administrativos especializados cobra más importancia cuando se revisan las determinaciones de aquellos organismos que tienen a cargo la reglamentación de complejos procesos técnicos, sociales o económicos. *Assoc. Ins. Agencias, Inc. v. Com. Seg. P.R.*, supra; *South P.R. Sugar Co. v. Junta*, 82 D.P.R. 847 (1961).

Por otro lado, la Ley Núm. 447, *supra*, determina un sistema de retiro y beneficios para los empleados del Gobierno de Puerto Rico. En relación a la incapacidad ocupacional, establece que el empleado que queda incapacitado para el servicio, como resultado de una incapacidad por causa del empleo o en el curso del mismo,

tendrá derecho a recibir una anualidad siempre que, entre otros requisitos, se recibiera suficiente evidencia médica que pruebe su incapacidad conforme a los criterios que el Administrador fije mediante reglamento. Artículo 9, 3 L.P.R.A. § 769.

Para los fines de una anualidad por incapacidad ocupacional o no ocupacional, se considerará incapacitado a un participante cuando su incapacidad sea sustentada con suficiente prueba médica conforme a los criterios fijados por el Administrador mediante reglamento y dicha prueba revele que el participante está imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiera asignado. Artículo 11, 3 L.P.R.A. § 771.

La Regla 24.4 del Reglamento General para la Concesión de Pensiones, Beneficios y Derechos, Número 4930, aprobado por la Administración de los Sistemas de Retiro y que entró en vigor el 25 de junio de 1993 (en adelante, Reglamento) establece que:

> Si de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos ("Adult Listings") establecidos para determinar incapacidad y del análisis que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición por beneficios de incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre incapacidad y someterá su recomendación al Administrador. Se considerará

capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiese asignado para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que está percibiendo.

Los criterios médicos para probar incapacidad, mencionados en la Regla 24.4 del Reglamento, son los adoptados por las autoridades federales bajo la Ley de Seguridad Social Federal, 20 C.F.R. Pt. 404, Subpt. P., App. I.

La obligación de probar la incapacidad es de la persona que solicita la pensión. El estatuto establece que se considerará capacitado al empleado si no está total y permanentemente imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiese asignado para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que está percibiendo. Este foro ha señalado anteriormente que la incapacidad que obligue al retiro al empleado con derecho a la anualidad por incapacidad debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y de cualquier otro empleo remunerativo. Una incapacidad leve que limita las funciones de su trabajo o de cualquier otro empleo remunerativo, no da base para recibir una pensión bajo el estatuto. *Sánchez v. A.S.R.E.G.J.*, 116 D.P.R. 372 (1985).

Visto el derecho aplicable, analicemos los hechos ante nos.

III

La peticionaria alega que erró el tribunal intermedio al confirmar la determinación de no incapacidad de la Junta de Síndicos por la razón que la misma no se conforma a la evidencia que obra en el record.

Un análisis del expediente revela que la señora López Echevarría tiene limitaciones físicas. Sin embargo, no hay prueba de que su incapacidad sea total y le impida efectuar alguna labor para su patrono. La Administración concluyó que la señora López Echevarría no cumple con los requisitos de incapacidad para que se le conceda la pensión solicitada. Considerando que las agencias cuentan con el conocimiento experto y con la experiencia especializada de los asuntos encomendados, sus decisiones merecen la mayor deferencia judicial.

Por otro lado, la señora López Echevarría no ha demostrado que existe prueba en el record que permita concluir que la determinación de la agencia no fue razonable de acuerdo con la totalidad de la prueba sometida. Al contrario, los argumentos que ofrece son especulativos y abstractos.

En conclusión, la decisión de la agencia administrativa está basada en el record y la peticionaria no nos ha puesto en condición de sustituir la apreciación de la agencia.

La señora López Echevarría señala, además, que erró el Tribunal de Apelaciones al sostener la interpretación que

hace la Junta de Síndicos de la Ley y el Reglamento del Sistema de Retiro.

Para la determinación de la incapacidad, el Reglamento se refiere al listado de criterios médicos ("Adult Listings") adoptados por las autoridades federales bajo la Ley de Seguridad Social Federal. Además, establece expresamente que se concederán los beneficios de pensión cuando se pruebe que el empleado esté total y permanentemente incapaz.

El hecho que la Administración utilice el mismo listado de criterios que usa la Administración de Seguro Social no la obliga en las determinaciones sobre incapacidad, sobretodo cuando el Reglamento establece claramente el grado de incapacidad a probarse, que debe ser total y permanente. En específico, el empleado será considerado capaz si no prueba su incapacidad total y permanente. La agencia queda autorizada a determinar, basada en la evidencia sometida, si hay o no incapacidad para la concesión de la pensión.

En el presente caso, la Administración determinó que la señora López Echevarría no cumple con el requisito de incapacidad establecido para conceder la pensión. La Resolución de la Administración está basada en la evidencia obrante en el expediente. La señora López Echevarría no aportó evidencia que pruebe que la determinación de la agencia no fue razonable. Por lo tanto, no podemos sustituir el criterio de la agencia por el de nosotros.

IV

Por los fundamentos que preceden, se confirma la sentencia del Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez emitió una Opinión Disidente, a la cual se unió la Juez Asociada señora Fiol Matta.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rosa López Echevarria

       Peticionaria

        v.

                       CC-2004-330

Administración de los Sistemas
de Retiro de los Empleados
del Gobierno y la Judicatura

       Recurrido


Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez a la que se une la Jueza Asociada señora Fiol Matta


San Juan, Puerto Rico, a 30 de agosto de 2006.


La Mayoría resuelve que la determinación de la Junta de Síndicos de la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura denegando los beneficios de incapacidad ocupacional a la allí peticionaria, merece nuestra deferencia. Al confirmar la misma, entiende que se trata de una determinación razonable realizada por la agencia en cuestión. Por entender que se comete una gran injusticia y que el criterio administrativo en el presente caso no puede prevalecer por haber sido rebatida adecuadamente la presunción de corrección, **DISENTIMOS.**

I

La señora Rosa López Echevarria, de 62 años de edad y cuya preparación académica es de un noveno grado de escuela intermedia, trabajó como Ayudante de Cocinera para el Departamento de Educación de Puerto Rico. Tiene cotizados en el Sistema de Retiro 16.50 años.

Mientras realizaba las labores de su puesto, sufrió un accidente de trabajo y sintió molestias en la pierna derecha, los codos y la cintura. Por ello, acudió a la Corporación del Fondo del Seguro del Estado, en adelante el Fondo, y luego de la correspondiente evaluación fue diagnosticada con las condiciones siguientes: "right and left epicondilitis", "right and left tenosinovitis", "sprain lumbar", "right knee sprain", "S/P right and left cts release". Como resultado de ello, el Fondo le reconoció una incapacidad de un veinte y cinco por ciento (25% F.F.) (Diez por ciento (10%) por "perdida mano derecha por la muñeca" y quince por ciento (15%) por "pérdida de mano izquierda por la muñeca"). Le reconoció, además, un cinco por ciento (5% F.F.) de incapacidad por "sprain lumbar".[1]

---

[1] Apéndice del recurso de *Certiorari*, pág.49. Luego de una vista celebrada ante la Comisión Industrial, ésta resolvió "[a]umentar la incapacidad en este caso a la pérdida de un veinte por ciento (20%) de las funciones fisiológicas por pérdida de la mano derecha por la muñeca y aumentar la incapacidad por pérdida de un quince por ciento (15%) de las funciones fisiológicas por la mano izquierda por la muñeca…" Otorgó, además, una incapacidad de un cinco por ciento (5%) de las funciones fisiológicas por **pérdida de la pierna derecha por amputación** en o más debajo de la rodilla con

El 20 de agosto de 1996, la señora López Echevarria solicitó una pensión por incapacidad ocupacional y no ocupacional ante la Administración de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura, en adelante, la Administración de los Sistemas de Retiro, al amparo de la Ley del Sistema de Retiro de los Empleados del Gobierno y la Judicatura, en adelante Ley Núm. 447.[2] Ello porque, además de las condiciones diagnosticadas por el Fondo, la señora López Echevarria padece de Diabete Mellitas (Tipo II), angina de pecho, artritis, "lumbar scoliosis and spondylosis" y "degenerative disc disease L1-L2 and L2-L3", y fue operada en ambas manos de "carpal tunnel syndrome". Todo lo anterior, sostuvo, le impedía realizar cualquier tipo de trabajo.

El 16 de diciembre de 1999, la referida solicitud de pensión fue denegada por la Administración de los Sistema de Retiro por entender que a base de la evidencia médica sometida, la condición médica de la señora López Echevarria no cumplía con los requisitos del listado del Seguro Social. El 26 de enero de 2000, la señora López Echevarria solicitó, sin éxito, la reconsideración del dictamen ante el Administrador de los Sistemas de Retiro.[3]

---

muñón satisfactorio. Apéndice del recurso de *Certiorari*, págs.176-177, 243.

[2] Ley Núm. 447 de 15 de mayo de 1951, 3 L.P.R.A. sec. 761, *et seq.*, según enmendada.

[3] Apéndice del recurso de *Certiorari*, págs. 62-63.

CC-2004-330

Entretanto, la Administración del Seguro Social federal declaró a la señora López Echevarria total y permanente incapacitada el 10 de octubre de 1997.

Inconforme con la determinación de la Administración de los Sistemas de Retiro, la señora López Echevarria acudió ante la Junta de Síndicos de dicha Administración apelando la denegatoria. Sostuvo que, luego de haber trabajado por 19 años en el Departamento de Educación quedó incapacitada de sus manos y no podía hacer ningún tipo de trabajo. Añadió que no podía realizar fuerza alguna con sus manos y que durante las evaluaciones a las que fue sometida se le exigió hacer cosas que no podía hacer, lastimándola.[4]

Luego de varios incidentes procesales, el 19 de julio de 2003, la Junta de Síndicos confirmó la determinación de la Administración de los Sistemas de Retiro. Sostuvo que cada condición de la allí apelante fue evaluada adecuadamente y que los listados de criterios médicos arrojaron un resultado no incapacitante. Añadió que las condiciones de la señora López Echevarria le imponen unas restricciones, pero no a tal punto que le impidan trabajar.[5]

Insatisfecha, la señora López Echevarria acudió en revisión ante el Tribunal de Apelaciones, quien confirmó la resolución recurrida.[6] Sostuvo que la decisión administrativa estuvo basada en evidencia sustancial, por lo

---

[4] Íd., pág. 72.

[5] Íd., pág. 247.

[6] El Juez Brau Ramírez disintió sin opinión escrita.

CC-2004-330

que no existía razón para sustituir el criterio de la Administración de los Sistemas de Retiro.

Finalmente, la señora López Echevarria acudió ante nos mediante recurso de *Certiorari*, señalando los errores siguientes:

**ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL NEGARSE A REVISAR LA RESOLUCIÓN DE LA JUNTA DE SÍNDICOS DE LA ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE GOBIERNO POR CONCEDERLE GRAN CONSIDERACIÓN Y DEFERENCIA YA QUE ESTA RESOLUCIÓN SE BASA SOLAMENTE EN PRUEBA DOCUMENTAL Y PERICIAL; Y EN CUANTO AL ANÁLISIS DE ESTE TIPO DE PRUEBA LOS TRIBUNALES ESTÁN EN LA MISMA POSICIÓN QUE LAS AGENCIAS ADMINISTRATIVAS**

**ERRO EL TRIBUNAL DE CIRCUITO DE APELACIONES AL NO MODIFICAR LAS DETERMINACIONES DE HECHOS DE LA JUNTA DE SÍNDICOS DE LA ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE GOBIERNO, YA QUE ÉSTAS NO SE BASAN EN EVIDENCIA SUSTANCIAL QUE OBRE EN EXPEDIENTE ADMINISTRATIVO, SINO QUE POR EL CONTRARIO, SON TOTALMENTE CONTRARIAS A LA PRUEBA OBRANTE EN AUTOS**

**ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL SOSTENER LA INTERPRETACIÓN QUE HACE LA JUNTA DE SÍNDICOS DEL SISTEMA DE RETIRO DE GOBIERNO DE LA LEY Y EL REGLAMENTO, YA QUE ESTA PRODUCE RESULTADOS INCONSISTENTES, CON O CONTRARIOS, AL PROPÓSITO DE LA LEY Y LLEVA A LA COMISIÓN DE UNA INJUSTICIA**

**ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL SOSTENER A LA JUNTA DE SÍNDICOS DE LA ADMINISTRACIÓN DE LOS SISTEMAS DE RETIRO DE GOBIERNO EN SU CONCLUSIÓN DE QUE LA PETICIONARIA NO ESTÁ INCAPACITADA Y QUE PROCEDE SU REINSTALACIÓN SIN DAR EL PESO MERITORIO A LA EVIDENCIA MÉDICA PRESENTADA Y OBRANTE EN LOS AUTOS DE ESTE CASO**

**ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL NO EVALUAR LA CAPACIDAD FUNCIONAL DE LA PETICIONARIA PARA HACER OTRO TRABAJO REMUNERATIVO, A LA LUZ DE SU EDAD, PREPARACIÓN ACADÉMICA, Y EXPERIENCIA DE TRABAJO.**

## II

¿Actuó correctamente el foro intermedio apelativo al confirmar la determinación de la Administración de los Sistemas de Retiro denegando la pensión por incapacidad ocupacional y no ocupacional solicitada? Concluimos en la negativa. Veamos.

La Ley Núm. 447, *supra*, es una ley general que establece un sistema de retiro y provee beneficios para la mayoría de los empleados del gobierno estatal. Ésta contiene varias modalidades de pensiones o anualidades por retiro. Entre ellas, las anualidades de retiro por edad, años de servicio y de mérito, incapacidad ocupacional y incapacidad no ocupacional.[7]

Específicamente, la pensión por incapacidad ocupacional y no ocupacional constituye "una de las fuentes de beneficio de mayor importancia para los participantes del Sistema de Retiro".[8] En el contexto del derecho a pensión de retiro por años de servicio, hemos expresado que dicha pensión tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que, habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado.[9]

---

[7] 3 L.P.R.A. secs. 766, 766(a), 769 y 770 respectivamente.

[8] Rodríguez v. Adm. Sist. Retiro, 2003 T.S.P.R. 78, 2003 J.T.S. 79, 159 D.P.R. ___ (2003).

[9] Sánchez v. Adm. Sist. Retiro, 116 D.P.R. 372 (1985); Román Mayol v. Tribunal Superior, 101 D.P.R. 801 (1973).

CC-2004-330

Respecto a la pensión por incapacidad **ocupacional**, el artículo 2-107 de la Ley Núm. 447[10], dispone en lo pertinente, lo siguiente:

> Todo participante que, como resultado de una incapacidad que se origine por causa del empleo y surja en el curso del mismo, quedare incapacitado para el servicio, tendrá derecho a recibir una anualidad por incapacidad ocupacional, siempre que:
>
> (a) Se recibiere suficiente prueba médica en cuanto a la incapacidad mental o física del participante conforme a los criterios que mediante reglamento fije el Administrador.
>
> (b) El participante o el patrono, de acuerdo con los reglamentos de la Junta, notifique al Administrador con respecto a dicha incapacidad.
>
> (c) El Fondo del Seguro del Estado determine que el accidente o enfermedad provino de cualquier función del trabajo o que sea inherentemente relacionado al trabajo o empleo.
>
> (d) El participante tendrá que radicar la solicitud, sustentada con suficiente prueba médica, dentro de los ciento ochenta (180) días en que se relacione la condición por la cual radica su solicitud. [Énfasis suplido].

Respecto a la incapacidad **no ocupacional**, el artículo 2-109[11] dispone lo siguiente:

> Todo participante que, teniendo por lo menos 10 años de servicios acreditados, se inhabilitare para el servicio, debido a un estado mental o físico y que por razón de ese estado **estuviere incapacitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado, tendrá derecho a una anualidad por incapacidad no ocupacional.** El retiro del participante tendrá lugar a petición o solicitud suya o a petición del jefe de su departamento u oficina, mientras esté en

---

[10] 3 L.P.R.A. sec. 769.

[11] 3 L.P.R.A. sec. 770.

CC-2004-330

> servicio el mencionado participante, y de acuerdo con las reglas sobre anualidades por incapacidad provistas en la sec. 771 de este título. [Énfasis suplido].

Además, el artículo 2-111[12], dispone respecto a la incapacidad **ocupacional y no ocupacional** lo siguiente:

> Para los fines de una anualidad por incapacidad **ocupacional o no ocupacional**, se considerará incapacitado a un participante cuando la incapacidad esté sustentada con suficiente prueba médica conforme a los criterios normalmente aceptados en el área de la compensación por incapacidad que mediante reglamento fije el Administrador y dicha prueba revele que el participante esté **total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que en el servicio del patrono se le hubiere asignado o para trabajar en cualquier empleo retribuido con retribución igual, por lo menos, a la que percibe.** El Administrador, según lo crea conveniente y necesario podrá requerir al participante que se someta a exámenes adicionales con médicos seleccionados por el Administrador. [Énfasis suplido]

Hemos expresado que "[l]a incapacidad que obligue al retiro del empleado con derecho a la anualidad que autoriza este artículo debe ser de tal naturaleza que le inhabilite para desempeñar las funciones de su empleo y cualquier otro empleo remunerativo".[13] Por ello, una incapacidad leve que limita las funciones de un empleado, pero que no le impide llevar a cabo las funciones de su trabajo o de cualquier otro

---

[12] 3 L.P.R.A. sec. 771.

[13] Sánchez Nieves v. Adm. Sist. Retiro, *supra*, pág. 376.

CC-2004-330

empleo remunerativo, no da base para recibir una pensión bajo el referido estatuto.[14]

El Reglamento General para la Concesión de Pensiones, Beneficios y Derechos[15], en adelante Reglamento General, describe los criterios que deben regir la evaluación médica sobre las condiciones incapacitantes. El referido Reglamento General incorporó, además, los requisitos establecidos por los artículos 2-107 y 2-111, *supra*.[16]

En específico, la Regla 24.4 del referido cuerpo reglamentario dispone lo siguiente:

> Si de la evidencia médica que consta en el expediente y conforme al listado de criterios médicos ("Adult Listings") establecidos para determinar incapacidad **y** del análisis e investigación que realicen los técnicos en determinación de incapacidad designados por el Administrador, no se pudiese determinar con certeza la incapacidad, se le podrá requerir al participante que se someta a aquellos exámenes médicos adicionales que se entiendan necesarios para adjudicar en sus méritos la petición de beneficios por incapacidad. Los exámenes médicos adicionales serán realizados por médicos seleccionados por el Administrador. Recibidos los resultados de dichos exámenes, el médico asesor hará la determinación final sobre la incapacidad y someterá su recomendación al Administrador. **Se considerará capacitado al participante, si no está total o permanente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con su sueldo o retribución por**

---

[14] Íd.

[15] Reglamento 4930 (1993).

[16] Véase, Reglas 23-25.

> **lo menos igual a la que esté percibiendo.**[17] [Énfasis suplido].

Los criterios médicos ("Adult Listings") a los que se refiere la antes citada Regla 24.4, son aquellos adoptados por las autoridades federales bajo la Ley de Seguridad Social Federal.[18]

Bajo dicho esquema, al hacer una determinación de incapacidad para llevar a cabo su trabajo, se considera, no solamente si el impedimento es de tal naturaleza que le impide llevar a cabo sus funciones, sino, además, si a la luz de su edad, educación y experiencia de trabajo el empleado no puede llevar a cabo otro trabajo remunerativo.[19]

Bajo este esquema, cuando la incapacidad sufrida por una persona cumple cabalmente con los criterios médicos enumerados en el Apéndice I de la Ley de Seguridad Social

---

[17] Al referirse a las pensiones por incapacidad no ocupacional, la Regla 25.4 contiene un lenguaje casi exacto al antes citado. Sin embargo, su última oración dispone lo siguiente "[s]e considerará capacitado al participante, si no está total y permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o, para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo **en el servicio activo**". [Énfasis suplido] Véase, Regla 25.4 del Reglamento.

[18] Específicamente, el Reglamento General define listado de criterios médicos como el Apéndice I ("Adult Listings") de los listados conteniendo criterios médicos para determinar incapacidades ("Social Security Regulations: Rules for Determining Disability") aprobados bajo las disposiciones del Titulo II de la Ley Federal de Seguridad Social, aprobada el 14 de agosto de 1935, Capítulo 531, 49 Stat. 620, oficialmente conocida como "Ley de Seguridad Social", según enmendada.

[19] Véase, 42 U.S.C.A. sec. 423(d).

CC-2004-330

Federal, la persona se considera incapacitada sin necesidad de hacer referencia a los factores socioeconómicos, y vocacionales de edad, educación y experiencia.[20] Sin embargo, si a base de los criterios enumerados en el Apéndice I no se puede llegar a una determinación, entonces se evalúa la capacidad funcional de la persona para seguir llevando a cabo la tarea que desempeñaba antes. Si no puede realizar la referida tarea, entonces se evalúa su capacidad residual funcional para hacer otro trabajo remunerativo, a la luz de su edad, educación y experiencia previa.[21]

El referido esquema de evaluación es consistente con el adoptado en nuestra jurisdicción bajo la Ley Núm. 447, *supra*. En virtud del mismo, el cumplimiento o no con los criterios médicos enumerados en el Apéndice I de la Ley de Seguridad Social Federal **no es necesariamente determinante** en la cuestión de si un empleado está o no incapacitado. La referencia a dichos criterios es el primer paso del proceso de evaluación, pero no agota el mismo. Por ello, si el empleado no cumple con los criterios del listado, entonces hay que determinar si la condición particular que tiene le permite seguir desempeñando las tareas del cargo específico que ocupaba y, de no ser así, si existe algún otro trabajo que podría realizar en el servicio del patrono o en cualquier otro empleo igualmente retribuido, a la luz de su edad, educación y experiencia de trabajo.

---

[20] Véase, 20 C.F.R. sec. 404.1520 (d).

[21] Véase 20 C.F.R. sec. 404.1520 (e) y (f).

De esta forma se cumple con el mandato legislativo de la Ley Núm. 447, *supra*, de evaluar al participante para hacer una determinación de si está total o permanentemente incapacitado e imposibilitado para cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo.

Por otro lado, y al interpretar la Ley del Sistema de Compensaciones por Accidentes de Trabajo[22], hemos expresado que aunque la determinación de lo que constituye incapacidad para realizar cualquier trabajo remunerado no es una tarea fácil, ello no significa que "el obrero tenga que estar tan impedido o inhabilitado físicamente, o que tenga una condición de salud tan ruinosa que su estado no le permita ninguna actividad, excepto mantenerse vivo".[23] Allí expresamos que, aunque una persona fuera capaz de realizar parte de un empleo, "desde el punto de vista legal, se le puede considerar como totalmente inhabilitada si no puede realizar aquellos aspectos sustanciales y básicos de trabajo, o sea, que si los servicios que puede prestar son tan limitados en calidad, cantidad o en cuanto a su condición de

---

[22] Ley Núm. 45 de 18 de abril de 1935, 11 L.P.R.A. sec. 1, *et seq.*, según enmendada. La referida ley tiene un lenguaje similar a la ley que nos ocupa para describir la incapacidad total y permanente. Es decir, las define como aquellas "…lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado para hacer toda clase de trabajo u ocupaciones remunerativas". Íd., sec. 3.

[23] Véase, Rodríguez v. Comisión Industrial, 90 D.P.R. 764,773 (1964).

confiables de modo que no hay un mercado o demanda para ellos, puede considerarse a la persona como totalmente incapacitada".[24]

Finalmente, hemos expresado que las leyes que crean derechos al disfrute de pensiones se deben interpretar liberalmente a favor del beneficiario, a fin de que se cumpla el propósito reparador para las cuales fueron aprobadas.[25] Esa es la razón de ser de la norma jurisprudencial a los efectos de que la fuerza y efecto de estas leyes no debe conformarse estrictamente a los términos literales del estatuto.[26]

Además, la interpretación y aplicación de las leyes debe hacerse a tono con el propósito social que las inspira y sin desvincularlas del problema humano que persiguen. Al interpretarlas, debe tener **preeminencia la realidad humana** de la vida, no la abstracción de reglas eternas e inmutables.[27]

En el presente caso, luego de evaluar la evidencia presentada, la Junta de Síndicos confirmó la determinación de la Administración de los Sistemas de Retiro y denegó los beneficios de pensión por incapacidad solicitados. Ello, por entender que la condición de la señora López Echevarria había sido evaluada adecuadamente y que los **listados de criterios**

---

[24] Id., pág. 772.

[25] Calderón v. Adm. Sist. Retiro, 129 D.P.R. 1020 (1992); Sánchez v. A.S.R.E.G.J., 116 D.P.R. 372 (1985); In re Castro y Torres Brachi, 73 D.P.R. 564 (1952).

[26] Calderón v. Adm. Sist. Retiro, *supra*, pág. 1034.

[27] Íd.

**médicos** arrojaron un resultado no incapacitante. Dicha determinación fue sostenida por el foro intermedio apelativo.

La Mayoría de este Tribunal entiende que el criterio de la referida agencia, sostenido por el foro intermedio apelativo, no puede ser sustituido por nuestro criterio. No estamos de acuerdo.

Un cuidadoso análisis del expediente ante nos y de la evidencia contenida en éste, nos convence de que tanto la Administración de los Sistemas de Retiro como la Junta de Síndicos, actuaron incorrectamente al evaluar la evidencia médica a la luz de los factores que deben guiar su determinación.

En el caso ante nos, la señora López Echevarria solicitó una pensión por incapacidad ocupacional y no ocupacional por sufrir de las siguientes condiciones: "right and left epicondilitis", "right and left tenosinovitis", "sprain lumbar", "right knee sprain", "S/P right and left cts release", Diabete Mellitas (Tipo II), angina de pecho, artritis, "lumbar scoliosis and spondylosis" y "degenerative disc disease L1-L2 and L2-L3, y fue operada en ambas manos de "carpal tunnel syndrome".

Sin embargo, la Administración de los Sistemas de Retiro concluyó que, su "condición médica de recurrente [sic] no llena los criterios del listado del SEGURO SOCIAL", y denegó la pensión solicitada.

Posteriormente, y al confirmar la determinación realizada por la Administración de Sistemas de Retiro, la Junta de Síndicos concluyó lo siguiente:

> "No obstante, la evidencia que surge de dicho expediente tiende a indicar que **cada condición** fue analizada adecuadamente por lo que **los listados de criterios médicos arrojaron un resultado no incapacitante**. Estamos completamente de acuerdo con que el análisis **de cada condición en particular, ninguna de ellas por sí solas** incapacitan al apelante. Dichas condiciones no son de tal severidad en las que podríamos identificar que **una de ellas** especialmente le incapacita para el trabajo. Los reportes médicos y resultados de laboratorio concluyen sin lugar a dudas que las condiciones no son de tal severidad que incapacitan a la apelante. Ciertamente las condiciones le imponen unas
>
> restricciones a la apelante, **pero no a tal punto que no le permitan trabajar"** [Énfasis nuestro].

Por todo ello, concluyó que las condiciones de la apelante, no igualaban los listados médicos siguientes: 4.03, 9.08 A, 1.05-C-1-2, 1.09 AC.[28]

Sin embargo, al evaluar el pedido de la señora López Echevarria entendemos que no se evaluó el impacto que, **en conjunto**, tienen las limitaciones resultantes de las condiciones que padece la señora López Echevarria. Sencillamente, y como si se tratara de una determinación mecánica, la Junta de Síndicos limitó su análisis a determinar si **cada condición** cumplía con el listado de criterios médicos y arrojaba un resultado incapacitante. Sin

---

[28] Apéndice del recurso de *Certiorari*, pág. 247.

embargo, no mencionó qué tipo de trabajo puede realizar la señora López Echevarria.

Adviértase, que el Reglamento General no dispone que para hacer una determinación de incapacidad, las condiciones de salud reportadas deben igualar estos listados, como si se tratara de un análisis mecánico. Al contrario, dispone que si de la evidencia médica que consta en el expediente **y** de conformidad con el listado de criterios médicos ("Adult Listings"), no se pudiese determinar con certeza la incapacidad, se podrán hacer otros estudios para esa determinación. También exige a los técnicos hacer un análisis de la evidencia médica para llegar a una determinación de incapacidad. Es decir, la referencia a dichos listados representa sólo el primer paso del proceso de evaluación.

En virtud de ello, si la señora López Echevarria no cumplía con los criterios del listado, evaluando conjuntamente sus padecimientos, habría que determinar si la condición particular que tiene le permite seguir desempeñando las tareas del cargo específico que ocupaba y, de no ser así, si existe algún otro trabajo que podría realizar en el servicio del patrono o en cualquier otro empleo igualmente retribuido, a la luz de su edad, educación y experiencia de trabajo.

Contrario a lo determinado por la Junta de Síndicos, la señora López Echevarria sufre de una serie de condiciones que evaluadas a la luz de los factores que deben guiar la

referida determinación de incapacidad, nos permiten concluir que cualifica para la pensión solicitada. Adviértase que se trata de una señora de 62 años de edad, con una preparación académica de un noveno grado de escuela intermedia, y que ha dedicado gran parte de su vida a trabajar como ayudante de cocinera. Además de ello, sufre de una serie de condiciones, que le imposibilitan cumplir los deberes de cualquier cargo que su patrono le hubiere asignado o para trabajar en cualquier empleo retribuido, con un sueldo o retribución por lo menos igual a la que esté percibiendo.[29]

Es decir, aunque del record no es posible concluir que dichos listados hayan sido satisfechos, la totalidad de las circunstancias de la señora López Echevarria nos permiten concluir que es acreedora a la pensión por incapacidad ocupacional y no ocupacional que reclama. Entendemos que, luego de considerar los factores antes mencionados, la señora López Echevarria está totalmente incapacitada. Es decir, ella no puede realizar aquellos aspectos sustanciales y básicos de trabajo y los servicios que puede prestar son tan limitados en calidad, cantidad o en cuanto a su condición de confiables de modo que no hay un mercado o demanda para ellos.

---

[29] Por mencionar un ejemplo, y respecto a su condición en las manos, el doctor que evaluó a la señora López Echevarría concluyó que ésta debía evitar funciones repetitivas de las manos, evitar levantar más de 3 libras, evitar estar de pie prolongadamente o caminar. Expresó, además, que la condición en sus manos no anticipaba mejoría.

CC-2004-330

Lo anterior, no solo es cónsono con la interpretación liberal que debe regir al interpretar las leyes que crean derechos al disfrute de pensiones sino que, además, reconoce la preeminencia que tiene la realidad humana de la vida al interpretar estatutos como el presente. De éste modo, además, cumplimos con el propósito social que persiguió el legislador al aprobar una de las fuentes de beneficio de mayor importancia para los participantes del Sistema de Retiro.

Finalmente, no hay duda, como sostiene la Mayoría, que la interpretación que de un estatuto hace la agencia administrativa encargada de su cumplimiento merece, de ordinario, deferencia. Ahora bien, cuando la interpretación que del estatuto hace la agencia administrativa produce, como en el presente caso, resultados inconsistentes con, o contrarios al propósito de la ley o lleva a la comisión de injusticias, el criterio administrativo no puede prevalecer. Es por ello que los tribunales, como últimos intérpretes de la ley, están autorizados para revisar las decisiones administrativas y, si necesario, revocarlas.[30]

III

Por los fundamentos antes expuestos, revocaríamos la sentencia recurrida y ordenaríamos a la Junta de Síndicos

---

[30] Calderón v. Adm. Sist. Retiro, *supra.*

conceder a la señora López Echevarria la pensión por incapacidad ocupacional y no ocupacional solicitada.

                              Efraín E. Rivera Pérez
                                 Juez Asociado